# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JOHN T. VALENTE,

       Plaintiff,           :          Case No. 3:08-cv-225

      -vs-                                Magistrate Judge Michael R. Merz

                              :

UNIVERSITY OF DAYTON,

       Defendant.

## DECISION AND ORDER DENYING MOTION FOR DUE PROCESS RECUSAL

This case is before the Court on Plaintiff's renewed Motion for Judicial Recusal (Doc. No. 122). While his prior Motions sought recusal pursuant to Canon 3(c)(1) of the Code of Conduct for United States Judges and 28 U.S.C.A. § 455, he now seeks recusal under the Due Process Clause[1] as recently elaborated by the United States Supreme Court in *Caperton v. A.T. Massey Coal Company, Inc.,* ___ U.S. ___, 129 S. Ct. 2252; 173 L. Ed. 2d 1208 (2009).

This Court has already twice denied Plaintiff's Motions for Recusal under the Code of Judicial Conduct and under 28 U.S.C. § 455. (Doc. Nos. 52, 56). Plaintiff sought mandamus from the Sixth Circuit to reverse that conclusion and that Court denied relief (Doc. No. 68). Plaintiff sought rehearing *en banc* relying on *Caperton*, and rehearing was denied. *In re: John Valente,* Case No. 08-4707 (Order of September 22, 2009).

As widely reported, the facts in *Caperton* were egregious. The facts as recited in Justice

---

[1]*Caperton* was decided under the Due Process Clause of the Fourteenth Amendment, which is not applicable to federal officers. There is no reason to believe, however, that the same analysis would not be applied under the Due Process Clause of the Fifth Amendment.

Kennedy's majority opinion are that in August 2002, a West Virginia jury returned a $50 million verdict for compensatory and punitive damages in an unfair competition case between Massey Coal Company and several of its competitors. The trial judge denied post-trial motions in June, 2004.

At least one seat on the West Virginia Supreme Court was contested in the Fall, 2004, election. The incumbent Justice McGraw was opposed by Brent Benjamin. Don Blankenship, the chairman, CEO, and president of Massey Coal, contributed the statutory maximum of $1,000 to Benjamin's campaign committee and almost $ 2.5 million to "And For The Sake Of The Kids," a political organization formed under 26 U.S.C. § 527 which opposed McGraw and supported Benjamin. Finally, Blankenship spent, in addition, just over $ 500,000 on independent expenditures -- for direct mailings and letters soliciting donations as well as television and newspaper advertisements -- "'to support . . . Brent Benjamin.'"

After Justice Benjamin took his seat, the trial judge finally entered judgment in March 2005, having denied Capterton's motion for judgment as a matter of law. Knowing the appeal would come, Caperton moved for Justice Benjamin to recuse himself under both the Due Process Clause and the West Virginia Code of Judicial Conduct based on Blankenship's campaign involvement. Justice Benjamin denied the motion, finding there was no objective information to show he had a bias for or against any litigant in the case. The appeal did come in December 2006, and the West Virginia Supreme Court granted review. In November, 2007, the court reversed 3-2. Chief Justice Davis and Justices Benjamin, and Maynard joined, finding Massey's conduct merited the size of the verdict, but reversing anyway.

The Supreme Court began its legal analysis by noting that "most matters relating to judicial disqualification [do] not rise to a constitutional level." *FTC v. Cement Institute*, 333 U.S. 683, 702 (1948). It then noted two lines of cases in which it had found due process violations. One of those lines requires recusal when a judge (or other adjudicating body) has an interest in the outcome of

the case. *Tumey v. Ohio*, 273 U.S. 510 (1927); *Ward v. Monroeville*, 409 U.S. 57 (1972); *Gibson v. Berryhill,* 411 U.S. 564, 579 (1973);*Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986). The other involves personal vilification of a judge as disqualification for his or her later sitting in judgment in a contempt action involving the vilification. *In re Murchison*, 349 U.S. 133 (1955); *Mayberry v. Pennsylvania*, 400 U.S. 455, 466 (1971).

From these two lines of cases, Justice Kennedy purported to draw a general rule: "Under our precedents there are objective standards that require recusal when "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable," *citing Withrow v. Larkin*, 421 U.S. 35, 47(1975)."In defining these standards the Court has asked whether, "under a realistic appraisal of psychological tendencies and human weakness," the interest "poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)[2].

Chief Justice Roberts in dissent[3] opined:

> Unlike the established grounds for disqualification, a "probability of bias" cannot be defined in any limited way. The Court's new "rule" provides no guidance to judges and litigants about when recusal will be constitutionally required.
>
> In any given case, there are a number of factors that could give rise to a "probability" or "appearance" of bias: friendship with a party or lawyer, prior employment experience, membership in clubs or associations, prior speeches and writings, religious affiliation, and countless other considerations. We have never held that the Due Process Clause requires recusal for any of these reasons, even though they could be viewed as presenting a "probability of bias."

129 S. Ct. at 1226-1228. The Chief Justice worried that the new "rule" would increase the number

---

[2] In *Withrow*, the Supreme Court had rejected a challenge to a procedure whereby a panel of doctors investigating a physician's alleged misconduct could also sit to decide whether he or she should be suspended. No actual Due Process violation was found.

[3] The Court divided 5-4 in deciding the case.

of allegations against judges. *Id*. at 1226. Commentators have doubted that much satellite litigation will be engendered. See White, Relinquished Responsibilities, 123 Harv. L. Rev. 120 (2009). Whether or not *Caperton* generates much satellite litigation, it plainly has generated the instant Motion which must be decided with whatever guidance can be gleaned from *Caperton*.

If *Caperton* really is about a set of extreme facts – facts about litigants choosing their own judges – no such facts exist in this case. Neither the University of Dayton nor its then-new School of Law nor any of its faculty members had any involvement in my initial appointment or subsequent election as a state court judge nor in my appointment as a United States Magistrate[4] in 1984. As best I can recall, no School of Law faculty member has sat on any of my three reappointment panels, nor can any of them serve in that capacity in the future since I have been reappointed to the last term for which I am eligible. Even if they had been involved, this case was not pending or impending at any of the relevant dates, except for the last reappointment (effective November 20, 2008). In sum, the Defendant did not "choose" me to be a judge so that I could preside in this case[5].

Nor are there any facts here which bring this case within the lines of cases represented by *Tumey* and *Murchison*. I have no pecuniary interest, direct or indirect, in the outcome of the case, nor does it involve any questions of personal insult or honor.

If on the other hand *Caperton* really does require recusal anytime there is a "probability of bias" in the sense that an outside observer with knowledge of the facts would reasonably suspect such a bias, then I would be required to recuse myself in this case under the Due Process Clause, for many of the categories of potentially biasing facts recited by the Chief Justice apply here. I was

---

[4]The title of the office was changed to "magistrate judge" by § 321 of Pub. L. 101-650.

[5]Of course, both parties chose me to preside under 28 U.S.C. § 636(c) with power to enter final judgment when they were perfectly free to insist on their right under Article III of the Constitution to a judge appointed for life by the President. Such consent must be, and was, unanimous.

previously employed by the School of Law as an adjunct instructor for many years (former employment). I am on friendly terms with all of the law faculty members with whom I am acquainted and consider myself a close friend of Professor Dennis Turner who is also a highschool classmate, a neighbor, and member of two social groups to which I belong (social friendship). The University of Dayton is a Catholic university, founded and run by the same religious order, The Society of Mary, which ran Chaminade High School, from which I received my diploma (religious affiliation). Some Law School faculty members are active in the Dayton Bar Association, of which I am a sustaining member (professional affiliation).

This standard, which seems to be the one Plaintiff believes *Caperton* adopts, would essentially require recusal of any judge who, if he were a prospective juror, would be peremptorily removed. However, the same Supreme Court which decided *Caperton* also held there is no constitutional right to peremptory challenges; they are purely a creature of statute. *Rivera v. Illinois*, 556 U.S. ___, 129 S. Ct. 1446, 173 L. Ed. 2d 320 (2009); *see also Baze v. Parker*, 371 F.3d 310 (6th Cir. 2004), *citing Ross v. Oklahoma*, 487 U.S. 81, 89 (1988). How could it be that the same Due Process Clause, interpreted by the same Supreme Court, mandates the recusal of a professional adjudicator but does not require disqualification of a lay adjudicator with the same potentially biasing characteristics?

This Court reads the "probability of bias" language in *Caperton,* at least as interpreted by the Plaintiff here, as dictum, far broader than needed to decide the case before the Supreme Court. The actual holding[6] in *Caperton* – a judge may not sit to decide the case of a litigant who "bought" the seat so that judge would be in place to decide the case – is far narrower. In this case the facts relied upon for disqualification (which are no different on the present Motion than on the prior

---

[6]Of course, grasping the distinction between holding and dictum in any particular case is notoriously difficult. See Schauer, Thinking Like a Lawyer, at 54-57 (Cambridge, 2009).

5

motions) have been ruled upon by this Court and reconsidered by a completely independent appellate panel, which found at least that the facts did not warrant mandamus, or even reconsideration in light of *Caperton*.

In opposing recusal (Doc. No. 126), the University emphasizes the extreme facts of *Caperton*, the exhaustive prior consideration given to recusal under standards which are presumably tighter than the Due Process Clause[7], and the inconvenience and expense to the University if the case were reassigned. The Court agrees with the first two arguments, but rejects any reliance on the third. As the Court held in denying discovery on the Motion, a constitutional mandate to recuse must be obeyed regardless of the cost to parties. See *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988).

In both the Motion and his Reply, Plaintiff argues that *Caperton* essentially "constitutionalizes" both 28 U.S.C. § 455 and the Code of Judicial Conduct. While the breadth of Justice Kennedy's "probability of bias" language could reasonably suggest that conclusion, that language is, again, dictum. Armed with exactly the same facts on which he now relies, Plaintiff was unable to obtain even one vote for rehearing *en banc* in the Sixth Circuit to apply *Caperton* in this case.

Plaintiff urges that the Court, as a matter of fairness, limit its decision on the Motion to those reason given by Defendant. As a general matter, the Court rejects the principle implicit in this request. A judge must decide matters before the Court as the law and facts require; he or she cannot refuse to follow the law just because it has not been cited by one party or the other. A familiar example is the requirement that a federal court inquire *sua sponte* into its own subject matter jurisdiction. See *Mansfield, C. & L M. Ry. v. Swan,* 111 U.S. 379, 4 S. Ct. 510, 28 L. Ed. 462 (1884);

---

[7]The Court reiterated in *Caperton* that most recusal questions do not "rise" to a constitutional level. That suggests that the Court believes the statutory and Code of Conduct standards are tighter than the Due Process Clause.

*Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 29 S. Ct. 42, 53 L. Ed. 126 (1908); *Sumner v. Mata*, 449 U.S. 539, 548, n.2, 101 S. Ct. 764, 770, n.2, 66 L. Ed. 2d 722 (1981). However, on the instant Motion, the Court limits its consideration to the arguments made by Defendant, but finds the facts here far different from the extreme facts supporting the holding in *Caperton*.

In denying the prior motions to recuse and recommending that the Plaintiff's Motion to Withdraw the Reference be denied, the Magistrate Judge has placed weight on the fact that the most important facts relied on by Plaintiff – particularly the Magistrate Judge's long employment as an adjunct instructor at UDSL – were disclosed by the Magistrate Judge at the outset of the litigation. At that time Plaintiff not only did not object, he affirmatively consented to plenary magistrate judge jurisdiction under 28 U.S.C. § 636(c). Plaintiff argues that no weight should be given to those facts on the instant Motion because, he alleges the Magistrate Judge violated Code of Judicial Conduct Canon 3(D) Remittal of Disqualification. He does not, however, allege what facts he relies on to show noncompliance and the Court believes it did comply.

Plaintiff also says the Court cannot infer a waiver under *Caperton* on the same basis as it inferred a waiver under 28 U.S.C. § 455(e), to wit, that the Plaintiff waited too long to raise the claim. The Court agrees. Plaintiff raised his *Caperton* claim first by making it in the Court of Appeals on his petition for rehearing en banc virtually as fast as he could have done so.

## Conclusion

It may be that the United States Supreme Court intends, as Plaintiff infers, to radically change the law of recusal by disqualifying on a constitutional basis any judge as to whom there is a possibility of bias or an objectively reasonable suspicion of bias. This Court declines to find such a radical change has been made *sub silentio*. Instead, the Court accepts Justice Kennedy's repeated

7

characterization of *Caperton* as an extreme case. For the reasons given on the prior Motions to Recuse, the undersigned is not disqualified. *Caperton* does not change that result.

The Second Motion for Recusal is DENIED.

November 19, 2009.

s/ **Michael R. Merz**<br>United States Magistrate Judge